## STATE v. ARTHUR DIMLER.[1]

October 13, 1939.

No. 32,114.

[1] Reported in 287 N. W. 785.

*William P. Murphy,* for appellant.

*J. A. A. Burnquist,* Attorney General, *M. Tedd Evans,* Assistant Attorney General, and *Harry E. Burns,* County Attorney, for the State.

JULIUS J. OLSON, JUSTICE.

Defendant was convicted of an assault in the second degree and appeals from "the judgment and sentence" imposed; also from the order denying his motion for new trial.

On September 24, 1938, defendant's 21st birthday, he left his home in St. Cloud shortly after noon and promptly proceeded to celebrate the event by imbibing, "not wisely but too well," intoxicating liquors of various kinds. He visited one drinking place after the other and on several occasions revisited some of them. He claims to have had many glasses of beer as well as from 14 to 20 drinks of "hard" liquor. During that afternoon and evening his celebration seems to have continued in full force. In the course of his spree about nine o'clock in the evening he met the complaining witness, a young and attractive lady of 23 years, and in his own language as set forth in a statement signed by him the next afternoon said:

A. "Yes, I guess I might as well tell you I met a young lady near the tin shop at Sixth avenue and Eighth street north.

Q. "Well, what happened then?

A. "All I can remember is that I struck her with my fist and then I heard her scream so I left and after walking a short distance I discovered I had lost my hat so I went back and got my hat. Then I went for home. I stopped at the car parked near filling station.

Q. "Did you have any conversation with the parties in [the] car?

A. "Yes. Someone asked me what had happened to my hands as they were bleeding. I told them I had a fight at Proell's.

Q. "Then what took place?

A. "I told Jack Meyers to get me a couple bottles of beer and I drank them. Then we were sitting in the car when the officers came and picked me up. That is all."

Numerous witnesses testified in the case both for and against defendant, most of the testimony relating to the amount of liquor consumed by him and the degree of his intoxication. Defendant made a feeble effort to establish an alibi, but this "fizzled out," and well it might, as defendant's principal effort at the trial was directed to the establishment of his claim that he was, "as a matter of law, * * * so intoxicated as to be totally irresponsible at the time of the alleged assault."

While defendant has assigned several errors, we think only two need discussion. The first relates to whether the court erred in admitting in evidence a photograph of the young lady whom he assaulted taken shortly after the assault. The person taking it was not an expert photographer. He was an amateur. But the testimony in the case leaves no doubt that the picture is a true portrayal of her then condition. That the picture was of evidentiary value is obvious to anyone viewing it. As we have seen, the assault was committed September 24, 1938. The trial did not take place until more than two months later. During the interim

her face cleared up leaving only a scar over her right eyebrow and a mark on her cheekbone.

■ Photographs are frequently received in evidence. They may be authenticated by any person who is able to testify that they are correct representations of the individual or situation as of the time taken. It is not essential that the photographer be called. Here, however, the deputy sheriff who took the picture was called. He testified that a part of his duties was "to take photographs." The picture was taken in the sheriff's office on September 26, two days after the assault, and is a "fair representation of the girl as she appeared there." We find no difficulty in sustaining the court's ruling that the photograph should be admitted in evidence. 2 Dunnell, Minn. Dig. (2 ed. & Supps.) § 3260, and cases cited under notes.

■ The next assignment relates to the court's instructions to the jury. The court read 2 Mason Minn. St. 1927, § 9914. Of course the section itself cannot be said to be prejudicial to defendant and apparently he does not so claim. But he does complain about the court reading the caption, "Intoxication or criminal propensity no defense," his argument being that thereby the instruction became "ambiguous, and so worded as to make it impossible for the jury to understand." We do not think so. After all, the jury cannot be presumed to have been misled. The important part of the court's charge is the following:

"In order to constitute the crime of assault in the second degree, it is necessary that at least two essential elements be linked together to make the crime. They are 'Intent' and 'Grievous Bodily Harm.' The defendant is presumed innocent until every essential element of the crime with which he is charged, has been proved by the state to your satisfaction beyond a reasonable doubt. It is incumbent upon the state to prove beyond a reasonable doubt that grievous bodily harm has been inflicted. You are instructed that pain, superficial wounds, and temporary impairment of some organ of the body are experienced by the victim in most of the ordinary assault and battery cases that do occur, but the presence

of one or all of such results does not, as a matter of law, bring the case within second degree assault."

Reading the charge in its entirety, we are not persuaded that it was prejudicial to any statutory or constitutional right accorded all who are accused of crime.

It is our duty in all criminal cases to examine the evidence with care, to the end that we may be able to determine the guilt or innocence of the accused.

"If there be no doubt of his guilt, alleged errors not affecting his substantial or constitutional rights should be brushed aside, and in their place substituted the almighty force and power of truth. * * * The safeguards thrown around accused persons are not intended as a means to enable the criminal to effect an escape from the punishment his crime calls for, but to protect the innocent and secure to all a fair, impartial, and orderly trial on definite lines of procedure." State v. Nelson, 91 Minn. 143, 145, 97 N. W. 652, 653.

We should be mindful also that a new trial in criminal cases should be granted cautiously and only for substantial error. State v. Barnett, 193 Minn. 336, 258 N. W. 508.

Thus viewing the record, it is quite evident that defendant has had a fair trial and was rightly convicted.

The judgment and order are both affirmed.

