**STATE of Minnesota,
Petitioner, Appellant,**

v.

**Myles A. KOOP, Respondent.**

**No. C1–84–2204.**

Supreme Court of Minnesota.

Jan. 31, 1986.

Hubert H. Humphrey, III, State Atty. Gen., Janet A. Newberg, Sp. Asst. Atty. Gen., St. Paul, David Olin, Pennington County Atty., Thief River Falls, for appellant.

C. Paul Jones, Minnesota State Public Defender, Mary C. Cade, Asst. State Public Defender, Minneapolis, for respondent.

## OPINION

AMDAHL, Chief Justice.

Defendant was found guilty by a district court jury of attempted second-degree murder and of second- and third-degree assault for attacking his ex-wife and two others with a tire iron. The Court of Appeals, 375 N.W.2d 496, granted defendant a new trial after concluding that the trial court prejudicially erred in denying a defense request for the submission of the lesser-included offense of attempted first-degree heat-of-passion manslaughter. We reverse the Court of Appeals and reinstate the convictions.[1]

The relevant facts are not in serious dispute. Defendant and his wife, Aloma, were married in 1967 and had two sons, born in 1968 and 1973. They lived on a farm but worked in Thief River Falls when jobs there were available. Defendant was occasionally physically abusive during the marriage. In the Spring of 1981, the abuse became so bad that Aloma took the children and sought refuge in a shelter for battered women. The divorce proceedings that followed were acrimonious and defendant continued to harrass Aloma throughout the proceedings, at times threatening her. Aloma originally had physical custody of the boys but the boys disliked living in town with her. In December 1983, defendant was awarded physical custody of the boys.

---

1. We granted the state's petition for review to correct the error of the Court of Appeals; we denied defendant's cross petition for review of the issue of the sufficiency of the evidence that defendant was not mentally ill.

Having physical custody, defendant felt that some of the furniture that the boys had used over the years but which had been awarded to Aloma should be given back to him. He took the matter into conciliation court on the day of the assaults. The judge told defendant that he would have to take the matter before the family court. Defendant became enraged at this. He tried to get a deputy sheriff to retrieve the property for him on the basis of an old, superseded court order, but the deputy refused. Defendant had a 12-gauge shotgun in his pickup truck and, according to one of his sons, got five shells out of the glove compartment and put them in his pocket (these shells were later found in defendant's pocket after his arrest). However, defendant's father, who was at the conciliation court hearing, took possession of the gun. After talking with the deputy sheriff, defendant drove to the hospital, where Aloma worked, and asked the receptionist to page her and have her call the deputy sheriff, who defendant hoped would persuade Aloma to return the property voluntarily. Defendant then returned to the deputy sheriff's office and learned that Aloma had called and had refused to transfer the property to defendant without a court order. Defendant said to the deputy, "I should have shot her when this all started."

Defendant then left, taking one of his sons with him, and drove to the hospital and waited for Aloma to come out. She came out with her roommate, Connie Grandstrand, and her uncle, John Hesse, and they got into her car. Defendant then backed into the car with his truck, preventing the car from leaving, and got out, took a tire iron from the box of the truck and began smashing the car windows. Aloma tried to run into the hospital but defendant caught her and began hitting her on the head with the iron. Grandstrand and Hesse intervened and got hit by the tire iron. Hesse eventually got the iron away from defendant but not before defendant had seriously injured Aloma.

Defendant was charged with attempted first-degree murder, first-degree assault, and two counts of second-degree assault.

He pleaded not guilty and not guilty by reason of mental illness. A bifurcated trial was held. Defendant testified during the first phase of the trial, which is the part with which we are concerned. He testified that he was "torqued" and at his "wit's end" when he left the deputy sheriff and headed for the hospital the second time, but he testified that he had no recollection of the events at the hospital.

A trial court must submit a lesser offense only if it is a so-called lesser-included offense and only if there is evidence that produces a rational basis for a verdict acquitting defendant of the offense charged and convicting him of the lesser offense. *State v. Leinweber*, 303 Minn. 414, 228 N.W.2d 120 (1975).

Under Minn.Stat. §§ 609.04, subd. 1(1) and 631.14 (1984), attempted first-degree heat-of-passion manslaughter is a lesser-included offense of attempted first-degree murder. *Leinweber*, 303 Minn. at 421, 228 N.W.2d at 125 (making it clear that all lesser degrees of homicide are "included offenses" under section 609.04).

The issue for us to decide is whether there was evidence sufficient to satisfy the rational basis test for submission of attempted heat-of-passion manslaughter. Under this test, "The lesser-included offense charge is not required simply because the jury could exercise its power of acquitting on the greater charge for no reason at all 'in the teeth of both law and facts,' * * *; there must be a rational basis for its doing so." *United States v. Markis*, 352 F.2d 860, 867 (2d Cir.1965), *vacated on other grounds*, 387 U.S. 425, 87 S.Ct. 1709, 18 L.Ed.2d 864 (1967). A conflict in the evidence, justifying the submission of a lesser offense, may arise by inference as well as by direct testimony. *Leinweber*, 303 Minn. at 422, 228 N.W.2d at 126.

One is guilty of attempted first-degree heat-of-passion manslaughter if one attempts to "[i]ntentionally [cause] the death of another person in the heat of passion provoked by such words or acts of another as would provoke a person of ordinary self-

control under like circumstances." Minn. Stat. §§ 609.17, .20(1) (1984). The Court of Appeals believed that this case is like *State v. Leinweber*, 303 Minn. 414, 228 N.W.2d 120 (1975), where we held that the trial court erred in refusing to submit heat-of-passion manslaughter. We disagree. In *Leinweber* the defendant's testimony repudiated heat-of-passion manslaughter, but there was evidence that the shooting occurred *during* a terrible argument in which the victim, the defendant's wife, cursed and vilified him. In short, there was evidence of acts or words of another as would provoke a person of ordinary self-control under like circumstances to act as the defendant did.

The record in this case is devoid of evidence showing any acts or words sufficient to provoke a person of ordinary self-control to act as the defendant did. This case is similar to a number of cases where we have held that submission of first-degree heat-of-passion manslaughter was not required by the evidence: *State v. Christianson*, 361 N.W.2d 30 (Minn.1985) (after coming to accept fact that wife, who was having affair with one Shaw, would divorce him, defendant went on short vacation; when he returned and found that wife had moved out, he went to the place of employment of wife and Shaw and, after talking with Shaw, shot him seven times; held, trial court properly refused to submit heat-of-passion manslaughter because there was no evidentiary basis to support the provocation element); *State v. Amos*, 347 N.W.2d 498 (Minn.1984) (after seeing victim in different car stopped at stop sign, defendant got out, ran up to victim's car and shot him; there was evidence that defendant and victim had argued earlier in the day and that victim had threatened to shoot defendant next time he saw him but the evidence was insufficient to establish provocation of the type needed to establish a rational basis for submitting heat-of-passion manslaughter); *State v. Edwards*, 343 N.W.2d 269 (Minn.1984) (state's evidence established that defendant was thinking about killing his brother-in-law before going to bar and defendant testified that he drew gun in self-defense and that the shooting was accidental; held, evidence that defendant believed the victim had abused defendant's sister in past was not by itself sufficient to require trial court to submit heat-of-passion manslaughter).[2]

Because the trial court did not err in refusing to submit attempted first-degree heat-of-passion manslaughter, we reverse the decision of the Court of Appeals and reinstate the convictions.

Reversed; convictions reinstated.

---

**2.** Other relevant cases supporting our decision include *State v. Kelley*, 342 N.W.2d 148 (Minn. 1984); *State v. Nurmi*, 336 N.W.2d 65 (Minn. 1983); *State v. Hoffman*, 328 N.W.2d 709 (Minn. 1982); *State v. Phelps*, 328 N.W.2d 136 (Minn. 1982); *State v. Lee*, 282 N.W.2d 896 (Minn. 1979); and *State v. Swain*, 269 N.W.2d 707 (Minn.1978).